UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHELDON WELLS, 02-A-4264,

                           Plaintiff

-vs-

OFFICER EVANS, et al.,

                           Defendants
_____

DECISION AND ORDER

15-CV-6094  CJS

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 in which Sheldon Wells ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), proceeding *pro se*, alleges that staff at Five Points Correctional Facility ("Five Points") violated his federal constitutional rights in various ways.  Now before the Court is Defendants' pre-answer motion for summary judgment (Docket No. [#16]).  The application is granted.

BACKGROUND

The following are the facts viewed in the light most-favorable to Plaintiff.  On February 20, 2015, Plaintiff commenced this action.  The Complaint (Docket No. [#1] indicates that on February 19, 2012, Plaintiff was housed in the Special Housing Unit ("SHU") at Five Points.  In the Complaint, Plaintiff indicates that at the relevant time, he was afraid that he would be assaulted or killed by corrections staff, who were angry at him for filing grievances and for writing to his family about conditions inside the prison. Plaintiff states, for example, that on February 8, 2012, Corrections Sergeant Goodliff, who is not a party to this action, and who was interviewing him about a grievance that he had filed, "threatened" him for having filed the grievance, though he does not

describe the nature of that alleged threat.

Significantly, Plaintiff does not allege that any defendant in this action ever threatened him about filing grievances.  At most, Plaintiff alleges that defendant Corrections Officer Evans said, "Stop writing complaints, nobody in your family is calling the jail."[1]  By way of explanation, Plaintiff cryptically states that a month or two prior to the events alleged in the Complaint, he had sent letters to his family members, with the words "vote or die" written on the envelope.  Plaintiff also indicates that he had asked members of his family to telephone Five Points and inquire about him.  According to Plaintiff, Evans told him to stop writing complaints, and stated, in response to Plaintiff's inquiries as to whether his family members had called Five Points, that Plaintiff's family members were not "calling the jail."

In any event, Plaintiff alleges that on February 19, 2012, in response to his further inquiries about his family, Evans told him, "Stop writing complaints, nobody in your family is calling the jail."  Evans then asked Plaintiff why he was not going outside for recreation, but Plaintiff did not respond.[2]  Plaintiff indicates that when he failed to respond, Evans observed him, and then stated, "You look suicidal."  Plaintiff responded by telling Evans that he was worried that his life was in danger, and that he did indeed feel that he might harm himself.[3]  In response to Plaintiff's statement, Evans arranged

---

[1] Complaint [#1] at ¶ 18.  Plaintiff also indicates in the Complaint that he told defendant Khulman that "he ha[d] received threats by Evans and other officers since January 22, 2012, when he wrote his family letters with vote or die written on the envelopes" but he does not indicate what the alleged threats were, except to say that Evans told him to "stop writing complaints," Id. at ¶¶ 22-23, 141, which, again, the Court does not view as a threat.  Moreover, Plaintiff does not allege that Evans was involved in the alleged assaults.

[2] Complaint [#1] ¶ 19.

[3] Complaint [#1] at ¶ 20.

to have Plaintiff observed by the Office of Mental Health ("OMH").

Plaintiff expected that he would be taken out of the SHU and placed in an observation unit run by OMH. Instead, though, corrections officers told Plaintiff that he was going to be taken to Five Points' infirmary, because the OMH observation cells were full. Upon hearing that, Plaintiff allegedly became fearful that he would be assaulted in the infirmary, because corrections officers at Five Points were known to assault inmates in the infirmary, where there were no security cameras. Consequently, Plaintiff recanted his intention to harm himself, and asked to be taken back to his cell. However, corrections officers informed Plaintiff that he could not go back to his cell until OMH cleared him to do so. The officers then placed Plaintiff in an observation cell in the infirmary, where he was observed by OMH staff.

Plaintiff contends that the observation cell was inadequate, because it did not have a bed or anything else for him to lie down on, and consequently he began constantly ringing the cell's "call bell." When Plaintiff refused to stop ringing the bell, corrections officers told him to place his hands through the cell door hatch, so that he could be handcuffed. Plaintiff refused, after which a team of corrections officers entered the cell to extract him. Plaintiff contends that during the cell extraction officers choked and assaulted him, causing abrasions to his shoulder and elbow. Plaintiff also alleges that the officers pulled him to his feet by his handcuffs, which caused lacerations to his wrists. After that, Plaintiff alleges that officers placed him in a cold shower and punched him in the eye, before placing him in another observation cell. Plaintiff contends that some of the officers observed the assaults and failed to intervene.

Plaintiff alleges that the second observation cell had no toilet or sink, because it

was a "dry cell" used to monitor inmates suspected of possessing contraband.  Plaintiff contends that corrections officers made him wait long periods of time before giving him a urinal bottle, and refused his requests for wash cloths to treat his abrasions.

Plaintiff alleges that immediately after the aforementioned assaults, Five Points medical staff examined him, but failed to treat his injuries or to accurately document them in his medical file.  Plaintiff contends that medical staff did not treat his injuries until February 24, 2012, when he was seen during sick call.  An entry in Plaintiff's facility medical record dated February 24, 2012, indicates that Plaintiff had only "superficial abrasions" that were "healing."[4]  Additionally, Plaintiff contends that on February 19, 2012, while he was in the second observation cell, medical staff gave him one injection of "psychotropic drugs" against his will, even though he had explained to them that he was not actually suicidal.

Subsequently, corrections officers filed a misbehavior report against Plaintiff, charging him with assaulting staff, violent conduct and refusing a direct order.  At the Tier 3 disciplinary hearing, Plaintiff contends that the hearing officer violated his due process rights, by refusing to allow him to present certain evidence in his defense.  On March 9, 2012, the hearing officer found Plaintiff guilty and sentenced him to ninety days in the SHU.  However, Plaintiff appealed, and DOCCS Director of Special Housing eventually reversed Plaintiff's conviction and expunged his record.

In his Complaint in this action, Plaintiff maintains that he attempted to exhaust his administrative remedies before commencing the lawsuit.  In that regard, Plaintiff begins by asserting that in general, Five Points failed to follow DOCCS procedures in

---

[4]Docket No. [#16-5], Ex. A.

that it did not provide a locked box into which SHU inmates could directly place grievance complaints. Consequently, Plaintiff maintains that he was deterred from filing grievances because he was fearful about handing his grievance complaints directly to corrections officers. Nevertheless, Plaintiff continued to file various grievances, by "mailing" them to the Inmate Grievance Resolution Committee ("IGRC") at Five Points.[5] Plaintiff alleges that the IGRC filed some of those grievances but not others.

With regard to his attempt to administratively exhaust the subject claims, Plaintiff states that on March 5, 2012, he mailed a grievance (dated February 29, 2012) to the IGRC, concerning the alleged events on February 19, 2012. The very next day, March 6, 2012, Plaintiff mailed a letter to Five Points' Superintendent, Defendant Colvin, stating:

> Superintendent Colvin
>
> *reason*: To make sure you received my 2/15/12-1/30/12 and 1 page 2/29/12 grievances pursuant to 7 N.Y.C.R.R. 701.8; I sent a two page 2/29/12 grievance to the IGRC 'today' regarding a 2/19/12 incident.
>
> Greetings: On March 5th, in a letter of appeal attached to two grievance[s] (2/15/12 and 1/30/12) you should have received by way of IGRC these complaints. If not let me know. *Today you should have received a 2 page 2/29/12 grievance pursuant to 7 N.Y.C.R.R. 701.8 by way of IGRC. If not let me know.*
>
> Respectfully, Sheldon Wells 02A4264

(Docket No. [#1-1] at p. 14) (emphasis added).

---

[5] Plaintiff does not explain this "mailing" process, or how it would practically differ from simply handing a grievance to a corrections officer. That is, since Plaintiff was confined in the SHU, it seems that in either case he would need to hand the document/envelope to a corrections officer, and if the envelope to be "mailed" was addressed to the IGRC it seems likely that a corrections officer would assume that it contained a grievance.

According to Plaintiff, the IGRC did not file the grievance dated February 29, 2012, or forward it to Colvin. Nevertheless, Plaintiff apparently did not re-contact the IGRC, or attempt to appeal to Colvin. Instead, approximately six weeks later, on April 16, 2012, Plaintiff sent a letter to DOCCS Commissioner Brian Fischer ("Fischer") and DOCCS Inmate Grievance Program Director Karen Bellamy ("Bellamy"), enclosing the grievance concerning the alleged assault on February 19, 2012, as well as several other grievances. *See*, Complaint, Ex. B [#1-1] at pp. 6-8. Plaintiff characterizes such letter as an "appeal" to DOCCS Central Office Review Committee ("CORC"). On April 25, 2012, Bellamy sent a responding letter to Plaintiff, on behalf of herself and Fischer.[6] In pertinent part, Bellamy's letter indicated that her office had contacted Five Points, and been told that Plaintiff had never filed a grievance "alleging an assault on February 19, 2012." Bellamy's letter continued as follows:

> Please be advised that Directive #4040, Part 701.5(c)(1), indicates that an inmate must submit an appeal to the clerk within seven (7) calendar days. You are advised to contact the facility IGP Supervisor with your mitigating circumstances for not filing your appeal within the time frames stipulated in Directive #4040 Part 701.6(g).
>
> Department of Correctional Services' policy, Directive #4040, Inmate Grievance Program (IGP), provides inmates with an orderly, fair, simple and expeditious method of resolving grievances pursuant to the Correction Law. The Directive makes no provision for an inmate to refer grievances directly to Central Office [CORC].

(Docket No. [#16-6] at p. 134). There is no indication that Plaintiff followed Bellamy's instructions to contact the Five Points IGP Supervisor about an appeal.

On September 10, 2015, Defendants filed the subject pre-answer motion for

---

[6] Docket No. [#16-6] at p. 134.

summary judgment (Docket No. [#16]), which included the required *Irby* notice.[7] The motion raises two points. First, Defendants raise the affirmative defense of "failure to exhaust administrative remedies." In that regard, Defendants maintain that Plaintiff filed four grievances after the February 19, 2012, incident, none of which included the subject claims. Defendants indicate that Plaintiff appealed only one of those grievances to the facility Superintendent, and never appealed any of them to CORC. Defendants further maintain that none of the exceptions to the exhaustion rule apply. In that regard, Defendants contend that Plaintiff cannot demonstrate that administrative remedies were "unavailable" to him, since he was able to file the aforementioned grievances, and since he ignored Bellamy's instruction to contact Five Points' Grievance Supervisor about the matter. Second, Defendants contend that Plaintiff's procedural due process claim lacks merit, since he did not have a liberty interest in avoiding confinement in the SHU for ninety days. In that regard, Defendants point out that an SHU sentence of ninety days is generally not considered a "significant and atypical" condition of confinement, although they admit that such a sentence might be considered significant and atypical if an inmate has serious untreated injuries. However, Defendants contend that Plaintiff's injuries were not serious, and that he therefore did not experience a significant and atypical hardship.

On October 26, 2015, Plaintiff filed a response [#20] to Defendants' motion, asking that the Court either deny Defendants' motion outright or permit him to conduct discovery before responding further to the motion pursuant to Fed. R. Civ. P. 56(f). With regard to exhaustion of administrative remedies, Plaintiff reiterates that Five Points

---

[7]*See*, Local Rule 56.2 Statement, Docket No. [#16-2]. Under the current version of the Local Rules of Civil Procedure, the provision requiring notice to *pro se* litigants is Rule 56(b).

disregarded DOCCS procedures (Directive 4040) when it failed to provide a locked box for SHU inmates to use for filing grievances. Plaintiff maintains that he was therefore denied access to grievance procedures. Plaintiff further indicates that he needs discovery in order to prove that Five Points did not provide inmates with a locked grievance box. Plaintiff also contends that the grievance records upon which Defendants rely, including records from CORC, are "inaccurate." Plaintiff does not dispute or reference Defendants' argument concerning the procedural due process claim.

On February 22, 2016, Defendants filed a reply [#27] in which maintain that Plaintiff's request for discovery is unnecessary, since they will admit for purposes of the instant motion that Five Points did not provide a locked box for SHU grievances. Defendants further argue that even if Five Points failed to provide a locked box for SHU inmates to submit grievances, such fact alone does not excuse Plaintiff from failing to exhaust administrative remedies.

## DISCUSSION

### *Rule 56*

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

The Court is mindful that this case is still in its early stages, and that ordinarily, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Young v. Benjamin Development Inc.*, 395 Fed.Appx. 721, 722–723, 2010 WL 3860498 at *1 (2d Cir. Oct.5, 2010) (citation omitted). However, the Court finds that it is appropriate to rule on Defendants' summary judgment motion for two reasons. First, although Plaintiff has asked to conduct discovery before responding to Defendants' motion, such discovery pertains only to whether or not Five Points had a "lock box" for SHU grievances, and Defendants admit that there was no such lock box. Accordingly, there is no issue of fact on that point. Second, with regard to the procedural due process claim, Plaintiff has not claimed that he needs discovery to oppose that aspect of Defendants' motion, and, indeed, Plaintiff already knows the conditions of his confinement and the extent of his injuries. Plaintiff, though, has not disputed Defendants' arguments on those points. Accordingly, there are no issues of fact on those points either.

### Exhaustion of Administrative Remedies

Defendants contend that Plaintiff failed to exhaust his administrative remedies before commencing this action, and that his claims must therefore be dismissed. The relevant legal principles are clear:

> The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

> available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures.
>
> ***
>
> The exhaustion inquiry thus requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.
>
> ***
>
> [New York's Inmate Grievance Program ("IGP")] has a regular three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC"). N.Y. Comp.Codes R. & Regs., tit. 7, § 701.7.

*Espinal v. Goord*, 558 F.3d 119, 123-125 (2d Cir. 2009) (citations and internal quotation marks omitted).

However, an inmate's duty to exhaust administrative remedies under § 1997e(a) may be excused in certain cases:

> Though exhaustion is generally mandatory, we have explained that a failure to exhaust administrative remedies may be excused where: (1) the administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) "special circumstances ... justify the prisoner's failure to comply with administrative procedural requirements." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004) (internal quotation marks omitted).

*Dabney v. Pegano*, 604 Fed.Appx. 1, 2015 WL 664562 at *1 (2d Cir. Feb. 17, 2015).

Here, Plaintiff appears to argue that Defendants should be estopped from raising

the affirmative defense of failure to exhaust.  Liberally construing Plaintiff's papers, he maintains that he experienced retaliation, in the form of "threats," when he filed grievances.  As already noted, such "threats" involved defendant Evans telling him, "Stop filing complaints."  The legal principles are clear:

> A prisoner may invoke the doctrine of estoppel when "defendants took affirmative action to prevent him from availing himself of grievance procedures." *Ruggiero [v. County of Orange]*, 467 F.3d [170,] 178 [(2d Cir. 2006)]. Prior cases have held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action. *See, e.g., Hemphill [v. New York,]* 380 F.3d [680,] 688 [(2d Cir. 2004)]; *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir.2004).

*Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011).

However, such estoppel only applies to a particular defendant if that defendant did something to prevent a plaintiff from exhausting administrative remedies. *See, Hemphill v. New York*, 380 F.3d at 689 ("[D]epending on the facts pertaining to each defendant, it is possible that some individual defendants may be estopped, while others may not be."); *see also, Mena v. City of New York*, No. 12 Civ. 0028(CM), 2014 WL 2968513 at *7 (S.D.N.Y. Jun. 27, 2014) ("The Second Circuit has indicated that the theory of equitable estoppel only estops a particular defendant from asserting the affirmative defense of non-exhaustion if the defendant's own actions inhibited the inmate from exhausting.").

On the other hand, an inmate-plaintiff's general fear of retaliation cannot estop defendants from raising the failure-to-exhaust affirmative defense. *Ceparano v. County of Suffolk*, No. 10–CV–2030 (SJF)(AKT), 2013 WL 6576817 at *4, 6 (E.D.N.Y. Dec. 13, 2013) (Inmate not excused from exhausting remedies where he did not indicate that any

defendant prevented him from exhausting his remedies, but stated only that he "knew that filing a Grievance would result in further harm to his health and further destruction of his property.") (collecting cases); *see also, Singh v. Lynch*, 460 Fed.Appx. 45, 48, 2012 WL 386416 at *2 (2d Cir. Feb. 8, 2012) ("Singh's subjective fear of retaliation was insufficient to support estoppel. Estoppel of a non-exhaustion defense requires some evidence of threats or other conduct by Lynch that could reasonably be understood as intended to inhibit Singh from pursuing administrative remedies for the alleged assault.").

In the instant case, Plaintiff has not shown that Defendants should be estopped from raising the affirmative defense. The only defendant who allegedly threatened Plaintiff is Evans, and his alleged statement, "stop filing complaints," cannot, without more, be reasonably interpreted as a threat.

Plaintiff has also not shown that administrative remedies were "unavailable," since he acknowledges that he was able to file his grievances with the IGRC by mail. As for Plaintiff's contention that the IGRC failed to file his grievance, the Court finds that such assertion fails to raise a triable issue of fact as to whether administrative remedies were available to him. In that regard, in response to Defendant's motion, Plaintiff fails to offer any specific information as to how he allegedly "mailed" the grievance to the IGRC. Even assuming that the IGRC filed some of Plaintiff's grievances but lost or misplaced others, such fact does not establish that administrative remedies were unavailable, particularly where it is undisputed that Plaintiff failed to follow Bellamy's instructions to contact the IGP Supervisor about the matter.

Nor has Plaintiff shown any "special circumstances" that would excuse his failure to exhaust administrative remedies. In that regard, the undisputed facts are as follows: Plaintiff mailed a grievance to the IGRC, and simultaneously sent a letter to Colvin

indicating that he had filed a grievance. Notably, Plaintiff's letter to Colvin did not include a copy of the actual grievance. Then, when Plaintiff heard nothing further after six weeks, he sent a copy of the grievance directly to CORC, rather than filing it with the IGP Supervisor. Even assuming *arguendo* that Plaintiff actually mailed the grievance to the IGRC in the first place, he cannot reasonably maintain that he subsequently appealed to the facility superintendent, since the letter that he sent to Colvin was sent simultaneously with the filing of the grievance. Nor can Plaintiff reasonably claim that he "appealed" to CORC, since Bellamy informed him that his attempt to appeal directly to CORC was improper and that he needed to contact the facility IGP Director directly, which he failed to do. In short, Plaintiff skipped the second and third steps of New York's three-step administrative process. To allow Plaintiff's claim to go forward under these circumstances would be to essentially eviscerate the exhaustion requirement. The Court declines to do so, and accordingly grants Defendants' summary judgment motion for failure to exhaust administrative remedies.

Procedural Due Process Claim

Even assuming *arguendo* that Plaintiff had administratively exhausted his claims before commencing this action, his procedural due process claim would nevertheless fail on the merits since he did not have a liberty interest in avoiding a ninety-day SHU sentence under the facts of this case. In that regard, Plaintiff says nothing about the actual conditions of confinement in the SHU while he was serving such sentence, and the duration of his sentence alone is insufficient to establish a liberty interest. *See, Borcsok v. Early*, 299 Fed. Appx. 76, 78 (2d Cir. Nov. 7, 2008) ("Because Borcsok does not complain of the conditions of his confinement, any protected liberty interest he possessed would be based upon the duration of his confinement. Even if we include the

eleven days that Borcsok spent in the SHU before the disciplinary hearing with the ninety days he received as part of his penalty, the duration of his confinement was neither atypical nor significant.  Accordingly, Borcsok's [101-day] confinement and loss of privileges did not rise to a liberty interest, warranting procedural due process protection[.]") (citations omitted).

To the extent that Plaintiff is attempting to argue that his otherwise-routine stay in the SHU was rendered "significant and atypical" because of his injuries, he has not demonstrated a triable issue of fact as to whether he had any significant untreated injuries.  In that regard, Plaintiff's response to Defendant's summary judgment motion fails to dispute or even mention the procedural due process claim.  Moreover, liberally construing the entire record in Plaintiff's favor, it appears that he suffered only minor abrasions, which were treated with antibiotic ointment on February 24, 2012, before he began serving his disciplinary sentence.  Moreover, Plaintiff had access to medical care throughout the duration of his SHU sentence.[8]  Consequently, Plaintiff has not shown that his alleged injuries, in combination with his SHU sentence, amounted to an atypical and severe hardship. *See, Aikens v. Royce*, No. 14-CV-663 (KMK), 2015 WL 7758892 at *6 (S.D.N.Y. Dec. 1, 2015) ("Plaintiff claims that he was in severe pain during his stay in keeplock[.] . . . While it is possible that the conditions in keeplock exacerbated Plaintiff's medical condition or made the keeplock conditions atypical, Plaintiff fails to allege any facts to support such claims.").

## CONCLUSION

Defendants' motion for summary judgment [#16] is granted.  The procedural due

---

[8]Docket No. [#16-5], Ex. A.

process claim is dismissed with prejudice.  The remaining claims are dismissed without prejudice, for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to terminate this action.

      SO ORDERED.

Dated:     Rochester, New York
            March 2, 2016
                            ENTER:

                            /s/ Charles J. Siragusa
                            CHARLES J. SIRAGUSA
                            United States District Judge